IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PRESTON DALE MCDOWELL,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFERSON COUNTY, CITY OF RIGBY, BLAIR OLSEN, STEVE ANDERSON, KEITH HAMMON, ANTONIO GONZALES, EMERSON PARSONS, and JOHN DOES I - V,<br><br>    Defendants. | Case No. 4:15-CV-507-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff McDowell claims two police officers used excessive force when they illegally arrested him in his home. He has sued (1) Jefferson County; (2) the City of Rigby; (3) Steve Anderson, Sheriff of Jefferson County; (4) Keith Hammon, Chief of Police for the Rigby Police Department; (5) Antonio Gonzales, a Deputy with the Jefferson County Sheriff's Office; and (6) Emerson Parsons, an Officer with the Rigby Police Department. The defendants seek summary judgment on all claims.

## FACTUAL BACKGROUND

On June 23, 2015, McDowell shattered the windshield of a jeep that had been parked in his driveway, and then pushed the jeep into a neighbor's fence. Witnesses called the police, and Officers Gonzales and Parsons responded to the call. The officers took statements from the witnesses and heard McDowell (1) apologize to his neighbor for the damage done to the fence, and (2) yell at others that they better "get the rest of your

**Memorandum Decision & Order – page 1**

shit before I push it out there like I did the jeep" or words to that effect. *See Gonzales Deposition (Dkt. No. 30-2)* at p. 52.

At this point, McDowell, obviously drunk, was standing his yard. Officer Parsons activated his body camera, preserving a video and audio record of the events that night.

The officers asked to talk to McDowell, but he refused, cursed the officers, and demanded that they get a warrant. Retreating to his front porch, McDowell continued berating the officers, and then went inside his home. The officers responded by asking McDowell to come out and talk with them. McDowell came out onto a covered porch attached to the front of his mobile home, and, leaning out of the porch area, continued to yell at the officers for trespassing on his property. After this outburst, McDowell walked back into the covered porch area and then entered his home through his front door.

After a few moments, Officer Gonzalez walked up the two steps leading onto the front porch. Officer Parsons was behind him and had not yet walked up onto the front porch when he can be heard to ask "Are we taking him out?" *See Gonzales Deposition, supra,* at p. 62 (confirming that Officer Parsons asked that question). Officer Gonzales responded, "Yes", and Officer Parsons can be heard radioing dispatch that they are going to take McDowell "into custody." In his deposition, Officer Gonzales explained that by the time the officers walked onto the front porch, they had decided to arrest McDowell. *Id.* at 63.

Officer Parsons then followed Officer Gonzalez onto the front porch. McDowell's front door was closed at this point. Officer Gonzales knocked on the door, and McDowell opened it just a small amount to protest that the officers were trespassing and

**Memorandum Decision & Order – page 2**

should get off his property. Officer Gonzales, placing his right foot against the base of the door to prevent McDowell from closing the door, asked McDowell several times to come out of his home. But McDowell adamantly refused, continued to curse the officers for trespassing, and demanded that they leave. Officer Gonzales recalled that McDowell tried to close the door "with my foot in it." *See Gonzales Deposition, supra,* at p. 77. McDowell can be heard grunting on the video tape as he apparently tried to close the door but was blocked by Officer Gonzales' foot. The door then swings open further and McDowell continued to protest.

At this point, McDowell was about two feet inside his home while Officer Gonzales' left foot was on the porch and his right foot was resting on the door's threshold, partly inside the home and jammed up against the door.[1] Officer Parsons was standing on the porch directly behind Officer Gonzales, continuing to record the incident through his body camera.

After a few minutes of this back-and-forth verbal sparring, Officer Gonzales told McDowell that he was under arrest, and asked him to put his hands behind his back. McDowell refused.

About 50 seconds after telling McDowell that he was under arrest, Officer Gonzales moved his left foot into the home so that he could grab McDowell who had remained about two feet inside his home. Officer Gonzales gripped McDowell's right

---

[1] These measurements and position descriptions are estimates based the police camera video. In finding McDowell to be about two feet inside his home, the Court means that McDowell was about 2 feet from the threshold of the front door.

arm and pulled him out of the house and onto the porch. He put McDowell in an "arm bar position to get him to go down [to] the ground." *See Probable Cause Affidavit (Dkt. No. 30-2, Exhibit 2)* at ¶ 15. Both officers commanded McDowell to "get on the ground" but he did not obey. Officer Gonzales then changed his hold "from an arm bar to an arm-over-arm bar position to get him to go down to the ground." *Id.* When McDowell continued to stand, Officer Parsons placed the Taser on McDowell's thigh and tasered[2] him for just over 2 seconds. McDowell fell to the porch floor, at which point the officers handcuffed him and took him to the Jefferson County jail. They charged McDowell with malicious injury to property, resisting arrest, and obstructing an officer, each a misdemeanor. He eventually pled guilty to "disturbing the peace" under Idaho Code § 18-6409, a misdemeanor.

## LEGAL STANDARDS

### Qualified Immunity – Legal Standards

The defendants ask the Court to hold as a matter of law that they are entitled to qualified immunity. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity gives government officials "breathing room to make reasonable but mistaken judgments about open legal

---

[2] The device used by Officer Parsons was a Taser used in a "drive-stun mode." *See Gonzales Deposition, supra,* at pp. 68-69. In that mode, it did not shoot darts but rather was applied directly to the body to deliver an electric current designed to stun the suspect into submission. *Id.*

questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011).

In determining whether an officer is entitled to qualified immunity, the Court must determine (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). Consequently, at summary judgment, an officer may be denied qualified immunity in a Section 1983 action "only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood his or her conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

**Qualified Immunity for Arrest – Analysis**

The law at the time of McDowell's arrest was clearly established: The police needed a warrant to enter McDowell's home to arrest him, unless exigent circumstances existed. *Payton v New York*, 445 US 573, 583-90 (1980). Exigent circumstances include instances where (1) the police are in hot pursuit of a suspect, *U.S. v Santana*, 427 US 38, 42 (1976); (2) the police have probable cause to think that the suspect will destroy evidence, *Welsh v Wisconsin*, 466 US 740, 749-50 (1984); (3) the safety of police or others is at risk, *U.S. v. Nora,* 765 F.3d 1049, 1055 (9th Cir. 2014); or (4) the defendant voluntarily exposes himself to the police presence without being coerced or deceived. *U.S. v Vaneaton*, 49 F3d 1423 (9th Cir 1995).

**Memorandum Decision & Order – page 5**

Examining the facts in a light most favorable to McDowell, did Officers Gonzales and Parsons violate this law? The video shows that Officer Gonzales, without a warrant, entered McDowell's home to effectuate his arrest of McDowell on misdemeanor charges. This would be a Fourth Amendment violation unless there were exigent circumstances. Did exigent circumstances exist here?

The defense argues that their strongest case for finding exigent circumstances is *Vaneaton.* There, officers entered the suspect's motel room to arrest him without a warrant. After equating the motel room with a home, the Circuit approved the arrest because (1) the officers stood in a public place (the motel hallway) when they knocked on the suspect's door, (2) the officers did not "resort to subterfuge or a ruse" to entice the suspect to open the door, and (3) the suspect opened the door without protesting the officers' presence and "voluntarily exposed himself to warrantless arrest." *Vaneaton,* 49 F.3d at 1427.

None of those elements is present here. Officers Gonzales and Parsons were not standing in a public area when they placed McDowell under arrest – they were standing on McDowell's front porch, a "classic exemplar" of the "curtilage" of the home, *Florida v. Jardines,* 133 S.Ct. 1409, 1415 (2013), which is treated as "part of [the] home itself for Fourth Amendment purposes." *Oliver v. U.S.,* 466 U.S. 170, 180 (1984). Moreover, the officers here were engaged in a subterfuge when they knocked on McDowell's door: They had already decided to arrest him, but instead of revealing that intent, they asked McDowell to come out so they could talk to him about the jeep incident. And perhaps most importantly, McDowell's act in opening the door was anything but a voluntary

**Memorandum Decision & Order – page 6**

consent – he was opening the door to protest that the officers were trespassers. Officer Gonzalez ensured that McDowell could not close the door by jamming it open with his right foot. There was nothing at all voluntary about McDowell's opening of his front door. *See generally, Hadley v. Williams,* 368 F.3d 747, 750 (7th Cir. 2004)(J. Posner) (holding that "[t]he fact that a person answers a knock at the door doesn't mean that he agrees to let the person who knocked enter").

No other type of exigent circumstance exists here. Unlike the officers in *Santana,* Officers Gonzales and Parsons were not in hot pursuit of a suspect who was fleeing. Officer Gonzales testified that he did not consider McDowell to be fleeing. *See Gonzales Deposition, supra,* at p. 75. Unlike the suspect in *Welsh,* McDowell had not retreated into his home to destroy evidence. Officer Gonzales testified that he was not concerned that McDowell would destroy any evidence. *See Gonzales Deposition, supra,* at p. 77.

The defense responds that the officers were concerned about the safety of those persons involved in the jeep incident. Defense counsel pointed to McDowell's belligerent and drunken demand, discussed above, that certain persons should "get the rest of your shit before I push it out there like I did the jeep," or words to that effect. *See Gonzales Deposition (Dkt. No. 30-2)* at p. 52. Evaluating the facts in a light most favorable to McDowell, his threat appears directed at property, not persons. There is no evidence that he had any weapons. Indeed, he was apparently harmless enough that the officers were willing to allow his wife to stay with him so she could calm him down. *Id.* at p. 44.

"When an officer undertakes to act as his own magistrate, he ought to . . . justify it by pointing to some real immediate and serious consequences if he postponed action to get a warrant." *Welsh*, 466 U.S. at 751. This is especially true when the suspected crime is a mere misdemeanor because "an exigency related to a misdemeanor will seldom, if ever, justify a warrantless entry into the home." *U.S. v. Nora,* 765 F.3d 1049, 1055 (9th Cir. 2014).

Thus, Officers Gonzales and Parsons must explain the immediate and serious consequences that would ensue if McDowell's arrest was postponed to get a warrant. *See United States v. Robertson,* 606 F.2d 853, 859 (9th Cir.1979) (holding exigent circumstances exist where "a substantial risk of harm to the persons involved or to the law enforcement process would arise *if the police were to delay a search until a warrant could be obtained* " (emphasis added)). For example, where there was no showing that a telephone warrant was unavailable or impracticable, the Circuit refused to find that a safety risk exigency existed. *U.S. v. Alvarez,* 810 F.2d 879, 883 (9th Cir. 1987).

When Officer Gonzales was asked in his deposition whether there was anything that prevented him from obtaining a warrant, he answered, "No." *See Gonzales Deposition, supra,* at p. 79. When asked for the reasons they did not get a warrant, Officer Gonzales stated, "He [McDowell] was not being very compliant. He was refusing to speak with me on the matter." *Id.* But this cannot constitute grounds by itself for finding exigent circumstances. *LaLonde v. City of Riverside,* 204 F.3d 947, 958 at n. 16 (holding that officers may not "enter the person's home and seize him simply

because he is unwilling to step into the public domain for questioning, even if probable cause exists to believe that some offense has been committed").

Once again evaluating the facts in a light most favorable to McDowell, there are no facts (1) establishing how long it would take to get a warrant, (2) why that period of delay posed an "immediate and serious" danger to the officers or other persons, and (3) why the only option was an immediate arrest. Under these circumstances, the Court cannot find as a matter of law that exigent circumstances allowed the police to enter the home without a warrant to make a misdemeanor arrest. Any reasonable officer would have realized, under the circumstances of this case, that the warrantless entry into the home violated McDowell's Fourth Amendment rights. The Court therefore finds as a matter of law that Officers Gonzalez and Parsons are not entitled to qualified immunity for their arrest of the defendant.

**Qualified Immunity for Excessive Force -- Analysis**

The use of force violates the Fourth Amendment if "it is excessive under objective standards of reasonableness." *Graham v. Connor*, 490 U.S. 386, 388 (1989). The analysis must be based on "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

In *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003), the Circuit affirmed the District Court's refusal to grant summary judgment on qualified immunity grounds, holding that it was objectively unreasonable for an officer to throw the plaintiff to the ground and twist her arm while handcuffing her when the plaintiff was only verbally resisting, and had not attempted to leave. Id.

**Memorandum Decision & Order – page 9**

Here, the video appears to show that McDowell (1) was continuing to be verbally abusive, and (2) was not complying with the officers demand to get down on the ground. What is not clear is the extent to which McDowell was physically resisting the officers' attempt to place handcuffs on him, given that all facts must be construed in favor of McDowell. It is also unclear whether the Taser was needed to ensure compliance. Moreover, the legality of the arrest remains to be resolved. For these reasons, the Court cannot find that the officers have, as a matter of law, qualified immunity from the excessive force allegations. Accordingly, the Court will deny this portion of the motion.

**Claims against Defendants City of Rigby & Jefferson County**

McDowell claims that his constitutional violations were caused by policies or customs of defendants Jefferson County and the City of Rigby. These defendants filed a motion for summary judgment, arguing that any constitutional violation was not caused by their policies or customs.

"[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691 (1978). Rather, to prevail on a § 1983 claim against a city, a plaintiff must prove that the constitutional injury was inflicted pursuant to city policy, regulation, custom, or usage. *Id.* "City policy causes an injury where it is the moving force behind the constitutional violation, or where the city itself is the wrongdoer." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994).

The Jefferson County Sheriff's Office Policy Manual states that "[e]xigent circumstances permitting entry into premises without a warrant or valid consent generally include any of the following . . . (b) [s]erious damage to property . . . ." *See ¶ 322.3.3(b) (Dkt. No. 30-6)* at p. 11. The phrase is not defined in the Manual. This was the official policy of both Jefferson County and the City of Rigby. The defendants cite no case holding that serious damage to property, without more, would constitute exigent circumstances, and the Court can find none.

Defendants argue that this policy could not be the "moving force" behind the arrest because the officers did not refer or depend on the policy in making that arrest. But defendants cite no case that this is required when an unconstitutional policy is in effect and covers precisely what the officers actually did – arrested McDowell on a malicious injury to property charge, using his threat to damage property as the basis for finding exigent circumstances.

Under these circumstances the Court will deny summary judgment to Jefferson County and the City of Rigby.

**Other Motions**

The defendants seek to strike McDowell's response brief for being a day late – actually three hours late as it was filed at 3:00 a.m. the day after it was due. They also seek to strike McDowell's motion for partial summary judgment for being 30 days late.

There is good cause for the late filing of the response brief as McDowell's counsel encountered technical problems with the e-filing system. The brief was only three hours

late and there was no prejudice as a result of the late filing. The Court will deny the motion to strike the response brief.

McDowell offers no reason, however, for filing his motion for partial summary judgment 30 days late. Accordingly, the motion to strike that motion will be granted. Correspondingly, McDowell's motion for extension of time will be granted in part and denied in part – it will be granted as to the response brief but denied as to the motion for partial summary judgment (which was contained in a portion of the response brief).

Defendants filed a motion to dismiss any state law claims, and McDowell conceded that the motion should be granted. The Court will therefore grant the motion to dismiss all state law claims.

McDowell's motion to file sur-reply brief is denied as moot.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for summary judgment filed by defendants (docket no. 27) is DENIED.

IT IS FURTHER ORDERED, that the motion to strike (docket no. 33) is GRANTED IN PART AND DENIED IN PART as set forth above.

IT IS FURTHER ORDERED, that the motion for extension (docket no. 36) is GRANTED IN PART AND DENIED IN PART as set forth above.

IT IS FURTHER ORDERED, that the motion to file sur-reply brief (docket no. 35) is DENIED as moot.

IT IF FURTHER ORDERED, that the motion to dismiss all state law claims (docket no. 23) is GRANTED.

DATED: January 18, 2017

B. Lynn Winmill
Chief Judge
United States District Court